**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 20-01316 (CGM) |
| v. | |
| Rafael Mayer, David Mayer, MONTPELLIER INTERNATIONAL LTD., PRINCE ASSETS LTD. (f/k/a PRINCE ASSETS LDC), PRINCE RESOURCES LDC, MONTPELLIER USA HOLDINGS LLC, KHRONOS LIQUID OPPORTUNITIES FUND LTD, and PRINCE CAPITAL PARTNERS LLC, | |
| Defendants. | |

**MEMORANDUM DECISION DENYING MOTIONS TO DISMISS**

**A P P E A R A N C E S :**

BAKER HOSTETLER LLP
*Attorneys for the Plaintiff*
45 Rockefeller Plaza
New York, N.Y. 10111
BY:   JASON OLIVER (via Zoomgov)
      CARRIE LONGSTAFF (via Zoomgov)

YANKWITT LLP
*Attorneys for Defendant Khronos Liquid Opportunities Fund Ltd.*
140 Grand Street, Suite 705
White Plains, N.Y. 10601
BY:   DANIEL ALTER (via Zoomgov)

BINDER & SCHWARTZ LLP
*Attorneys for Defendant Rafael Mayer*
366 Madison Avenue, Sixth Floor
New York, New York 10017
BY:   ERIC FISHER (via Zoomgov)

COHEN & GRESSER LLP
*Attorneys for Defendants Prince Resources LDC and Prince Capital Partners LLC*
800 Third Avenue, 21st Floor
New York, New York 10022
BY:   DANIEL TABAK (via Zoomgov)

TEARNS WEAVER MILLER
*Attorney for David Mayer, Individually*
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL 33130
BY:   CARLOS CANINO (via Zoomgov)
      EUGENE STEARNS (via Zoomgov)
      MATTHEW GRAHAM (via Zoomgov)

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

## I.  Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, No. 08-01789 (CGM), is pending.  The SIPA proceeding was originally

brought in the United States District Court for the Southern District of New York as *Securities*

*Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791

and has been referred to this Court. This Court has jurisdiction over this adversary proceeding

under 28 U.S.C. § 1334(b) and (e)(1), and SIPA § 78eee(b)(2)(A) and (b)(4). This is a core

proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O).

## II.  Background

The Complaint arises in connection with the infamous Ponzi scheme perpetrated by

Bernard L. Madoff ("Madoff") through his investment company, Bernard L. Madoff Investment

Securities, LLC ("BLMIS").  As recognized by the Securities Investor Protection Corporation

("SIPC"), this is not a typical SIPC proceeding in which securities or cash were on hand at the

time of the failure of the brokerage house.  *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243

(Bankr. S.D.N.Y. 2010).  It was a fraud of "unparalleled magnitude" in which the only assets

available to pay customer claims were "other people's money or assets derived from such

funds." *In re BLMIS*, *LLC*, 445 B.R. 206, 215 (Bankr. S.D.N.Y. 2011).

The Trustee holds a final judgment against Legacy Capital Ltd. ("Legacy Capital") in the

amount of $79,125,781.00.[1]  Legacy Capital was a single purpose vehicle invested solely with

BLMIS.  Through this lawsuit, the Trustee is seeking to recover $49,505,850 in subsequent

transfers ("Subsequent Transfers") of BLMIS's customer property that Legacy Capital allegedly

made to Montpellier International Ltd. ("Montpellier") and Prince Assets Ltd. ("Prince").  At the

---

[1] *See Picard v. Legacy Capital Ltd. (In re BLMIS, LLC)*, Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y.) (the "Legacy Adversary Proceeding").

time that Montpellier and Prince allegedly received the Subsequent Transfers, these two entities were part of a network of entities that included the other Defendants, and were allegedly controlled by Rafael ("Rafael") and David ("David") Mayer (together, the "Mayers").

In the complaint ("Complaint"), the Trustee alleges that after learning about BLMIS's fraud, the Mayers altered the structure of Montpellier and Prince and liquidated the companies in order to conceal the Subsequent Transfers and prevent their being clawed back. Compl. ¶ 5, ECF No. 1.

It is alleged that "Montpellier received [one payment of] $50,000,000 on September 4, 2007—which . . . included up to approximately $12,505,850 of fictitious profits—and [a second payment of] $27,000,000, consisting entirely of fictitious profits, on October 4, 2007. Prince received $10,000,000, consisting entirely of fictitious profits, on June 6, 2008." *Id.* ¶ 61. Montpellier allegedly transferred $39,505,850 to Montpellier Resources Limited, which later changed its name to the Khronos Group ("Khronos Group"). *Id.* ¶ 63. It is alleged that Khronos Group subsequently transferred some of those funds to Montpellier USA and Prince. *Id.* ¶¶ 64–65. Prince allegedly transferred its Subsequent Transfer funds to Prince Resources LDC ("Prince Resources"); and Prince Resources transferred funds to Prince Capital Partners LLC ("Prince Capital"). *Id.* ¶¶ 66–67.

As part of the Trustee's efforts to collect BLMIS's customer property, the Trustee issued a subpoena for an examination under Federal Rule of Bankruptcy Procedure 2004 on Rafael and Khronos LLC dated July 7, 2010. *Id.* ¶ 98; Warshavsky Declar., ECF No. 45, ex.1A. As part of the subpoena, the Trustee requested the production of documents relating to subsequent transfers of customer property. Compl. ¶ 98. These documents were ultimately produced on October 6, 2010, after a motion to quash was filed and denied. *Id.* ¶ 111.

While the production of documents in response to that 2004 subpoena was outstanding, around August 2010, Khronos LLC and the Mayers allegedly began dismantling the "Montpellier Group,"[2] which was a "labyrinthine structure" comprised of private investment vehicles owned by the Mayers, their family members and close associates. *Id.* ¶¶ 68, 71. Montpellier Group was replaced with a "structure centered around" Khronos Liquid. *Id.* ¶ 72. Around that same time, various corporations that were allegedly controlled by the Mayers, changed their names from Montpellier related names to Khronos related names, "including Khronos Group LLC (f/k/a Montpellier LLC), Khronos LOF Holdings LLC (f/k/a Montpellier USA Redemption Holdings LLC), and Khronos LOF Investments LP (f/k/a Montpellier Investments LP). *Id.* ¶ 102.

Then in January 2017, right after the close of factual discovery in the Legacy Adversary Proceeding, Montpellier, allegedly, voluntarily wound up under the laws of Bermuda. *Id.* ¶ 103. Rafael served as director during the dissolution. *Id.* ¶ 103. No notice was provided to the Trustee of the dissolution. *Id.* ¶ 103. In September of 2017, Khronos Group was dissolved after a voluntary liquidation in which Rafael served as liquidator. *Id.* ¶ 104. Again, no notice was provided to the Trustee. *Id.* ¶ 104.

In April 2019, David served as liquidator and oversaw the dissolution and liquidation of Prince, an alleged holder of Subsequent Transfer funds. *Id.* ¶ 105. No notice was provided to the Trustee. *Id.* ¶ 105.

The Trustee asks the Court to pierce the corporate veil and make the Mayers personally liable for the Subsequent Transfers.

---

[2] It is not clear from the Complaint which entities make up the "Montpellier Group." The Complaint defines it as: "Montpellier served as a holding company in a larger investment fund complex that operated as a fund-of-funds (the 'Montpellier Group'). The Montpellier Group comprised numerous entities incorporated in different jurisdictions that were, in one way or another, connected to Montpellier Resources (later Khronos Group), a Bermuda entity that acted as the master fund."

Before the Court are three separate motions to dismiss.[3]   Khronos Liquid Opportunities Fund, Ltd. ("Khronos Liquid aka 'KLOF'") moves to dismiss for lack of personal jurisdiction and for failure to state a claim.  Memo. L., ECF No. 18.  Rafael moves to dismiss for failure to state a claim arguing that the Trustee has failed to plead a claim for alter ego and failed to plead that Rafael received the funds in question, among other things.  Memo. L., ECF No. 22.  David also filed a motion to dismiss based upon improper group pleading, failure to properly plead an alter ego claim, and failure to allege David received the funds in question.  Memo. L., ECF No. 26.

The Court held a hearing to consider the motions on September 15, 2021.  *See* Hr'g Tr. 116–178, ECF No. 97.

### III. Discussion

### A. Khronos Liquid

*i. Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2)*

Khronos Liquid argues that the case should be dismissed against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6).  Although Khronos Liquid is a company organized under the laws of the Cayman Islands, the Trustee alleges that it purposefully availed itself to the laws of the United States and the state of New York by undertaking "significant commercial activities" in New York and that it "derives significant revenue" from New York.  Compl. ¶ 12.  The Trustee also alleges that Khronos Liquid is managed by Rafael in New York.  *Id.*

---

[3] Prince Resources and Prince Capital filed a motion to dismiss arguing that the Trustee has failed to plead lack of good faith with regards to each Subsequent Transfer, including those allegedly made to them.  Memo. L., ECF No. 27.  This motion has been withdrawn.

While it is well established that a plaintiff bears the burden of establishing the Court's personal jurisdiction over a particular defendant, the showing that a plaintiff must make "varies depending on the procedural posture" of the case. *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 621–22 (S.D.N.Y. 2015). To meet this burden at the pleading stage, the plaintiff need only to make "a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Id.* (citations omitted). This burden can be met by making legally sufficient allegations and an averment of facts that, when taken as true, would suffice to establish jurisdiction. *Id.*

The Trustee alleges that there is general jurisdiction over Khronos Liquid under the "nerve center" test. General jurisdiction may be asserted over a corporation in the place of incorporation and principal place of business.[4] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The "principal place of business" is the "nerve center" of the business or "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010).

Despite being incorporated under the laws of the Cayman Islands, Khronos Liquid allegedly has no operations in that country. Instead, Khronos Liquid is alleged to be run out of New York where all its officers and directors are based. Compl. ¶ 20 (Khronos Liquid was managed by a New York based LLC); *see also* ¶ 80 ("At all relevant times, the entities comprising the Montpellier Group, the Prince master fund structure, and the [Khronos Liquid] master fund structure shared directors, officers, beneficial ownership, shareholders, business operations, and offices."). The Trustee provided copies of official SEC forms demonstrating that

---

[4] At oral argument, counsel for Khronos Liquid asked this Court to focus on a specific quote in *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014): "[O]nly where its contacts are so continuous and systematic, judged against the corporation's national and global activities, that it is essentially at home in that state." Hr'g Tr. 174:17-20. In *Gucci*, the Court of Appeals for the Second Circuit interpreted *Daimler* and explained in the very next sentence that "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci*, 768 F.3d at 135.

for the years 2011 through 2020 the majority of Khronos Liquid's directors and officers were located in New York. *See* Warshavksy Decl., Exs. 13–22. Additionally, Khronos Liquid allegedly derives significant revenue from New York. Compl. ¶ 12; *see also* Warshavksy Decl., Ex. 26 (showing Khronos Liquid listed under "Dealers; Brokers" in the N.Y. State register of securities offerings). These allegations are sufficient to demonstrate a prima facie showing that Khronos Liquid is "essentially at home" in New York and general jurisdiction may be asserted over Khronos Liquid. *Daimler AG v. Baum*, 571 U.S. 117, 137 (2014).

The Trustee also alleges that specific jurisdiction may be asserted over Khronos Liquid. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks and citations omitted). The Complaint asserts that Khronos Liquid received the Subsequent Transfer funds from Montpellier/Khronos. It is alleged that Khronos Liquid "succeeded and took over for" Montpellier/Khronos. Compl. ¶ 94. It is alleged that Khronos Liquid received the assets of Montpellier Resources, which included subsequent transfer funds. *Id.* ¶ 93. The Trustee also alleges that the Mayers created Khronos Liquid to prevent the Trustee from collecting the subsequent transfers from Montpellier and Khronos and that Khronos Liquid was managed by Khronos LLC, a New York limited liability company. *Id.* ¶ 110. Khronos Liquid is alleged to have received the Subsequent Transfers with knowledge that they were BLMIS's customer property.

Khronos Liquid argues that none of the Subsequent Transfers were transferred to it upon its creation, as the Trustee has alleged. The Trustee has made a prima facie showing that Khronos Liquid had sufficient minimum contacts with the United States, specifically New

York,[5] regarding the services rendered in connection with the other Defendants, and any related transfers arose out of those contacts and were the proximate cause of the injuries the Trustee seeks to redress in this action. *SIPC v. BLMIS, LLC*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018); *see also Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) ("We conclude that the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress, constitutes purposeful availment of the privilege of doing business in New York, so as to permit the subjecting of [a foreign Defendant] to specific jurisdiction within the Southern District of New York consistent with due process requirements."). Whether Khronos Liquid actually received these funds is an issue to be determined by this Court after discovery.

The exercise of personal jurisdiction over Khronos Liquid comports with traditional notions of fair play and substantial justice as many of Khronos Liquid's officers and directors are located in New York, it is managed by a New York based company, and it has capable New York counsel.

*ii. Failure to state a claim under Fed. R. Civ. P. 12(b)(6)*

The Trustee has moved to avoid the Subsequent Transfers under § 550 of the Bankruptcy Code. Section 550(a) states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from-- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

---

[5] "We pause to note that, despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)

Khronos Liquid argues that the Trustee has failed to state a claim by failing to allege that the funds at issue originated with BLMIS.  Simultaneously, Khronos Liquid cites the portion of the Complaint where the Trustee asserts the Subsequent Transfers took place: "starting on July 26, 2011, Khronos Group supposedly transferred approximately $109 million to KLOF, designated as 'in connection with the Continuing Fund.'"  Kronos Liquid Memo. L. 4, ECF No. 18.   The Trustee has alleged that the Mayers created Khronos Liquid and transferred millions of dollars to it with the intent of hiding the Subsequent Transfers made to Montpellier and Prince.  Compl. ¶ 94.  The Transfers to Khronos Liquid from Montpellier are alleged to have come from Legacy Capital, which originated with BLMIS.  Compl. ¶ 2. ("With this Complaint, the Trustee seeks to recover approximately $49,505,850 in subsequent transfers of BLMIS customer property . . . made to Montpellier and Prince by Legacy Capital Ltd. . . . , which was a single purpose vehicle invested solely with BLMIS and organized under the laws of the British Virgin Islands.").

Khronos Liquid argues that the claim has not been plead with enough specificity as to how and what Subsequent Transfers Khronos Liquid received. Khronos Liquid argues that it is not alleged "that the defendant is a subsequent transferee of that initial transfer" as is required under § 550 of the Bankruptcy Code.  Reply at 15, ECF No 49.

The Court disagrees.  "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible

grounds to infer an agreement does not impose a probability requirement at the pleading stage; it

simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence

of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual

allegations are true and determine whether, when read together, they plausibly give rise to an

entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a

recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

> As has previously been stated by this Court,

> the Trustee is an outsider to these transactions and will need discovery to identify
> the specific subsequent transfers by date, amount and the manner in which they
> were effected.  The Moving Defendants are a group of interrelated individuals and
> entities . . . .  Whether they additionally received Subsequent Transfers of BLMIS
> funds from one another is a question to which they, and they alone, have the
> requisite information to respond.

*In re BLMIS, LLC*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011).  The Complaint contains

sufficient information regarding which transfers the Trustee is seeking to recover.[6]  Compl. ¶ 93–

95 ("Upon information and belief, after KLOF was registered in 2011, the Liquid Opportunities

Fund Segregated Account and the Continuing Class assets were transferred to KLOF. Upon

information and belief, beginning on July 26, 2011, KGL transferred $109,253,099 to KLOF.

Upon information and belief, after this date, KLOF succeeded and took over for Khronos Group.

The Montpellier Subsequent Transfers received by Khronos Group are therefore recoverable

from KLOF.  Ledger entries note that these payments were in connection with the

---

[6] As part of its opposition to this motion, Khronos Liquid filed a declaration of Rafael Mayer that included fourteen
exhibits in an attempt to demonstrate that Khronos Liquid did not do what the Trustee has alleged that it did.  Decl.
R. Mayer, ECF No. 20.  At this stage of the litigation, the Court need not concern itself with whether the allegations
contained in the Complaint are plausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"Continuing Fund."). The allegations contain plausible grounds to infer that Khronos Liquid received the Subsequent Transfers as part of a scheme and that discovery may reveal additional information on this scheme.

And Khronos Liquid knows what funds the Trustee is referring to because it has asserted a factual defense to these specific allegations. Khronos Liquid Memo. L 15, ECF No. 18 ("Because the Khronos Group assets came solely from the Continuing Account they contained no part of the Subsequent Transfers."). Khronos Liquid's motion to dismiss must be denied.

**B. The Mayers**

Rafael and David each brought a motion to dismiss asking the Court to dismiss them from the case. At the September 15, 2021 hearing on this motion, David's counsel argued that the Trustee has alleged a claim of "aiding and abetting" a transfer. Hr'g Tr. at 172, ECF No. 97 (citing *Klein v. Tabatchnick*, 610 F.2d 1043 n.4 (1979) and *Stern v. Singh Factors, LLC (In re Shore to Shore Realty Inc.)*, 2011 WL 350526, at *8 (Bankr. E.D.N.Y. 2011)). The Complaint contains no counts for aiding and abetting a fraudulent transfer. It contains only one Count, which is the recovery of Subsequent Transfers against all Defendants, pursuant to 11 U.S.C. § 550 and SIPA § 78fff-2(c)(3). Compl. 27. The Complaint does ask this Court to pierce the corporate veil, (*Id.* ¶ 76) and this remedy is appropriate in subsequent transfer actions. *See Shore to Shore Realty*, 2011 WL 350526, at *5 ("Where appropriate, a plaintiff may seek to pierce the corporate veil of a corporation or an LLC to hold its owners liable for the debts of the corporation or LLC.").

*i.  Choice of Law for Piercing the Corporate Veil*

The Defendants argue that Cayman Island and/or Delaware law should apply to the Trustee's veil piercing claims. The Trustee argues that New York law should apply. The choice

of law rules of the forum state are used to determine which jurisdiction's law governs a veil

piercing claim. *In re Saba Enterprises, Inc.*, 421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009). Under

New York choice of law principles, the law of the state of incorporation of the corporation

governs which law should be used to determine whether to pierce the corporate veil. *Id. But see

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 137 (2d Cir.

1991) (applying New York substantive law to veil piercing claims where parties have consented

by their conduct to that application).

**a.  *New York***

Khronos is a New York limited liability company and as such, New York law applies to

piercing its corporate veil.  Compl. ¶ 20.

"Under New York law, courts may pierce the corporate veil *either* in the event of a fraud

*or* where the corporation has been so dominated by an individual or corporate parent that the

subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego." *In re Saba

Enterprises, Inc.*, 421 B.R. 626, 650 (Bankr. S.D.N.Y. 2009). To determine whether a

corporation has been used as an alter ego, the Court of Appeals for the Second Circuit has set

forth the following ten factor test:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the
> corporate existence, i.e., issuance of stock, election of directors, keeping of
> corporate records and the like, (2) inadequate capitalization, (3) whether funds are
> put in and taken out of the corporation for personal rather than corporate
> purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common
> office space, address and telephone numbers of corporate entities, (6) the amount
> of business discretion displayed by the allegedly dominated corporation, (7)
> whether the related corporations deal with the dominated corporation at arm[']s
> length, (8) whether the corporations are treated as independent profit centers, (9)
> the payment or guarantee of debts of the dominated corporation by other
> corporations in the group, and (10) whether the corporation in question had
> property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).   No factor is dispositive; the Court must conduct a fact intensive analysis.  *Saba*, 421 B.R. at 650.

### b.  *Delaware*

Prince Capital is a Delaware limited liability company and Montpellier USA is a dissolved Delaware limited liability company.  Compl. ¶¶ 18, 17.  As such, Delaware law applies to the Trustee's claims to pierce their corporate veils.

Under Delaware law, "a court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner."  *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ct. Chancery 1992*); see also Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors.").

To prevail on an alter ego theory, there is no requirement of a showing of fraud. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (discussing Delaware veil piercing law); *see also Mobile Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) ("Fraud is frequently cited as a basis on which to pierce the corporate veil, but it is not the only one: It may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations are involved.").

Rather, "a plaintiff must show (1) that the parent and the subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness is present."  *Fletcher v. Atex, Inc.*, 68 F.3d at 1457.

### c.  *Cayman Islands and Bermuda (Montpellier, Khronos Group)*

Khronos Liquid, Prince Resources are companies organized under the laws of the Cayman Islands. Compl. ¶ 12, 13. Prince was organized and dissolved under the laws of the Cayman Islands. *Id.* ¶ 15. Khronos Group was organized and dissolved under the laws of Bermuda. *Id.* ¶ 16. Montpellier was organized and dissolved under the laws of Bermuda. *Id.* ¶ 14. British law applies to veil piercing claims against these entities.

The Mayers acknowledge that both the Cayman Islands and Bermuda follow the decisions of the Supreme Court of United Kingdom on piercing the corporate veil. Decl. Potts ¶¶ 16-18, ECF No 23 & 26-1. The leading case on piercing the corporate veil under British law is *Prest v. Petrodel Resources Limited*, [2013] UKSC 34.[7] Under British law, a court may pierce the corporate veil where: 1) an individual; 2) deliberately evades or frustrates a legal obligation; 3) by interposing a company under his control. *Id.* at 18, ¶ 35; *see also Persad v. Singh*, [2017] UKPC 32 at 5, ¶ 15[8] ("[A] court may pierce the corporate veil when there is an abuse of the corporate personality to evade or frustrate the legal consequences of one's actions."). Fraud is not a requirement to piercing the corporate veil under British law, and yet, where fraud is proven, "[n]o court in [Great Britain] will allow a person to keep an advantage which he has obtained by fraud. No judgment of a court, no order of a Minister, can be allowed to stand if it has been obtained by fraud. Fraud unravels everything." *Prest v. Petrodel Resources Ltd.*, [2013] UKSC 34 at 9, ¶ 18.

The Mayers argue that there is no such thing as "alter ego" liability under the laws of the Cayman Islands or Bermuda; yet, British law requires a finding that an individual "interpose a company under his control" just as New York law requires that a corporation be "so dominated"

---

[7] available at, https://www.supremecourt.uk/cases/docs/uksc-2013-0004-judgment.pdf
[8] available at, https://www.jcpc.uk/cases/docs/jcpc-2016-0021-judgment.pdf

by an individual, and Delaware law requires that a corporation is a "mere instrumentality" of its

owner.

They also argue that permitting a corporate veil to be pierced is "rare" under British law.

Rather than being rare, Lord Sumption advises that the principle is a "limited one" and yet, even

he recognized that "where the abuse of the corporate veil to evade or frustrate the law can be

addressed only by disregarding the legal personality of the company" piercing the veil "is . . .

consistent with authority and with long-standing principles of legal policy." *Id.* at 18 ¶35.

   ii.  *The Trustee has met his pleading burden for piercing the veil under New York,
         Delaware, and British law*

The Trustee has met his pleading burden under each of these tests for piercing the

corporate veil.  In the Trustee's Complaint, it is alleged that the Mayers abused the corporate

structures of the companies under their control for the purpose of evading and/or frustrating the

Trustee's efforts to collect the Subsequent Transfers from them.

It is alleged that while the Trustee was in litigation with Legacy Capital, the Mayers

realized that Montpellier and Prince would ultimately be liable for millions of dollars of

BLMIS's customer property under § 550 of the Bankruptcy Code as subsequent transferees.

Compl. ¶¶ 96–97.  To avoid paying the Trustee these funds or in order to frustrate the Trustee's

collection efforts in his attempts to collect these funds, the Mayers, knowingly, dismantled these

companies and moved the corporate assets to new companies with different names.  *Id.* ¶ 98–

102.  It is also alleged that the liquidation and/or dissolution of these companies was done

without informing the Trustee, despite his status as a creditor. *Id.* ¶¶ 103–106.  The Trustee

alleges that the Mayers also hid the fact that the corporations were insolvent so that they could

liquidate their assets without court supervision.  *Id.* ¶ 107.

   a.  ***New York law***

Under New York law, the Trustee must allege facts that, if proven, would demonstrate

that the Mayers used the Defendants as an "alter ego." To prove that, the Trustee must allege:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the
> corporate existence, i.e., issuance of stock, election of directors, keeping of
> corporate records and the like, (2) inadequate capitalization, (3) whether funds are
> put in and taken out of the corporation for personal rather than corporate
> purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common
> office space, address and telephone numbers of corporate entities, (6) the amount
> of business discretion displayed by the allegedly dominated corporation, (7)
> whether the related corporations deal with the dominated corporation at arm[']s
> length, (8) whether the corporations are treated as independent profit centers, (9)
> the payment or guarantee of debts of the dominated corporation by other
> corporations in the group, and (10) whether the corporation in question had
> property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir.
1991).

The Trustee has met this burden. He has alleged that Khronos' funds were being used for

personal purposes (Compl. ¶ 70, 88); there was overlap in directors and officers (*Id.* ¶¶ 20, 69,

81); use of common office space (*Id.* ¶ 81); lack of arm's length relationships (*Id.* ¶¶ 80-102);

lack of independence (*Id.* ¶¶80-102); payment of debts of the dominated corporation by other

corporations (*Id.* ¶¶ 84-99); and use of property by other corporations as if it were its own (*Id.* ¶¶

78, 82-99).

### b. *Delaware law*

To meet his pleading burden under Delaware law, the Trustee must allege "that the parent

and the subsidiary operated as a single economic entity and (2) that an overall element of

injustice or unfairness is present." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995). In

addition to the aforementioned allegations, the Trustee also alleges that the Mayers created

Prince Capital to hide evidence relevant to a 2004 examination in this Court and to prevent the

Trustee from being able to trace the assets of Khronos. Compl. ¶¶ 111, 112 ("When Khronos

finally disclosed the name of the entity that replaced it—no earlier than on the deadline set by the

Bankruptcy Court—the reason for Khronos's obfuscation became clear. The new service

provider was Prince Capital, an entity affiliated with Khronos, and, of course, the Mayers.").

This is sufficient to demonstrate an "overall element of injustice or unfairness."

### c. *Cayman Islands and Bermuda law*

Under British law, the Trustee must allege that the Mayers deliberately evaded or

frustrated a legal obligation by interposing the Defendants under their control.  The Complaint

does so.  The Trustee alleges that the Mayers knew of their legal obligation to turnover the

Subsequent Transfer funds and to provide whatever information was sought as part of the 2004

examination.  Compl. ¶ 96–102 (alleging that the Mayers "misused the corporate form after

liability to the Trustee arose") (cleaned up), ¶ 111 (alleging that the Mayers created a new

corporation and transferred corporate documents in an attempt to avoid responding to a subpoena

issued by this Court).  The Trustee also alleged that the Mayers "breached their duty to the

Trustee, as a creditor of Montpellier, Prince and Khronos Group."  *Id.* ¶ 106.

### iii. *Failure to Plead that Mayers took Subsequent Transfers*

The failure to plead that the Mayers took Subsequent Transfers is not fatal at this juncture

of the litigation.  The Trustee need not demonstrate that the Mayers received the Subsequent

Transfers for liability to be imposed upon them.  "[P]iercing the corporate veil . . . is not, in and

of itself, an independent cause of action but a procedural device through which a plaintiff may

assert facts and circumstances to persuade the court to impose the parent corporation's obligation

on the subsidiary or *vice versa*."  *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 321 (S.D.N.Y.

1999). *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (referring to the "alter ego theory of

parent liability" under Delaware law); *In re Verizon Coverage Appeals*, 222 A.3d 566, 570 (Del.

2019) (referring to piercing the corporate veil as "alter ego liability"); *Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at *9 (Del. Ct. Chancery Aug. 21, 2020) ("Delaware law presents two paths to vicarious liability: first, via veil-piercing, instrumentality, or alter-ego theories, which focus on setting aside the corporate form due to the complete domination and control of one entity over another; and second, via agency theory, which respects the corporate form and instead focuses on wrongdoing authorized by one entity, but conducted by another."). Similarly, under British law, piercing the corporate veil is a liability shifting "principle" to be used by courts "for the purpose, and only for the purpose, of depriving the company or its controller of the advantage that they would otherwise have obtained by the company's separate legal personality." *Prest v. Petrodel Resources Ltd.*, [2013] UKSC 34 at 18, ¶ 35.

There may be situations where "depriving the company or its controller of the advantage that they would otherwise have obtained by the company's separate legal personality" would not amount to the same thing as "liability" but in this case, the Trustee has asserted that the Mayers gained an advantage of evading collection of Subsequent Transfers by liquidating their businesses and moving shares of the companies into new businesses. In this instance, making the Mayers "liable" for the Subsequent Transfers is the same as "depriving them of the advantage they would otherwise have obtained"—that advantage being financial gain. Compl. ¶ 71 ("[P]ublicly available documents indicate that the Montpellier Group was comprised of private investment vehicles primarily owned by Rafael Mayer and David Mayer . . . [and] their family members . . . ."); ¶ 88 ("On September 17, 2010, Montpellier and Prince Resources paid attorneys for responding to the Trustee's Rule 2004 subpoenas directed to the Mayers.")

If the Trustee can prove, at trial, that a corporate Defendant received the Subsequent

Transfers, he may ask the Court to pierce that corporation's veil and make either or both of the

Mayers liable for those Subsequent Transfers.

    *iv.  Group Pleading*

Defendants argue that Federal Rule of Civil Procedure 9(b) does not permit "group

pleading."  While this is generally true, group pleading is permissible where, like here, the

Complaint "informs each defendant of the nature of his or her alleged participation in the fraud."

*Id.* (cleaned up).   "[N]o specific connection" between the fraudulent behavior and particular

defendants is necessary "where . . . defendants are insiders or affiliates."  *DiVittorio v. Equidyne*

*Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987).   The Court of Appeals for the

Second Circuit reasoned that

> where . . . much of the factual information needed to fill out plaintiff's complaint
> lies peculiarly within the opposing parties' knowledge, the general rule
> disfavoring allegations founded upon belief ought not to be rigidly enforced. An
> example is the shareholder derivative action, in which the complaining
> stockholders know little of the ways in which the corporation's internal affairs are
> conducted.

*Id.* at 1248.

The Trustee has alleged that the Mayers were insiders of the corporate Defendants.

Compl. ¶¶ 10–11.  And the Complaint sets forth specific information of the wrong that he is

accusing them of committing.  *Id.* ¶ 5 ("After BLMIS's fraud was revealed, Rafael and David

Mayer altered the corporate structure of—and ultimately liquidated—Montpellier and Prince to

conceal and prevent the Subsequent Transfers from being returned to the BLMIS estate, and

without providing notice to creditors—chief among them, the Trustee—in the United States.");

*see also id.* ¶¶ 68–116 (approximately ten pages of the Complaint are devoted to the wrongs

committed by the Mayers).  No one could have more information regarding the allegations in the

Complaint than the Mayers themselves.

>    *v. Whether the Transfers were made in "good faith"?*

At oral argument, the Defendants raised the fact that the Subsequent Transfers occurred

in 2007 and 2008 and that the Trustee has failed to allege that wrongful conduct occurred at the

time of the transfers.  Section 550(a) states "[e]xcept as otherwise provided in this section, to the

extent that a transfer is avoided under section . . . 548 . . . , the trustee may recover, for the

benefit of the estate, the property transferred . . . from [an initial or subsequent transferee]."

11 U.S.C. § 550(a).  Section 550(b) states "[t]he trustee may not recover" from a subsequent

transferee "that takes for value, . . . in good faith, and without knowledge of the voidability of the

transfer avoided." § 550(b)(1).  "Although § 550(b) is written differently and affects a different

class of transferees than § 548(c), the statutory structure, case law, and legislative history make

clear that good faith under § 550(b) is an affirmative defense." *Picard v. Citibank (In re BLMIS)*,

12 F.4th 171, 197 (2d Cir. 2021) (the Legacy Capital appeal).  The Trustee is not required to

plead Defendants' lack of good faith.  *Id.* at *18 ("Federal Rule of Civil Procedure 8(c)(1)

provides that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or

affirmative defense," placing the burden to plead on the defendant.).

## IV. Conclusion

For the foregoing reasons, the motions to dismiss are denied.  The Trustee shall submit

separate proposed orders, corresponding to each motion, within fourteen days of the issuance of

this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all

parties, as required by Local Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris



**Dated: October 27, 2021**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**